UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                                )
UNITED STATES OF AMERICA                    )
                                                                )
            v.                                                  )            Criminal No. 00-0105 (PLF)
                                                                )            Civil Action No. 13-1066 (PLF)
BYRON LAMONT MCDADE,                       )
                                                                )
            Defendant.                                     )
_____ )

MEMORANDUM OPINION

            On February 25, 2002, after a ten-day trial, a jury found defendant Byron Lamont

McDade guilty of conspiracy to distribute and possess with the intent to distribute five kilograms

or more of cocaine.  Most of the witnesses at trial were his former co-defendants or others

involved in the conspiracy who had negotiated pleas with the government involving cooperation

and testimony.  In fact, McDade was the only one of those charged in this multi-defendant case

to have proceeded to trial.  Regrettably, pursuant to the then-mandatory pre-*Booker* sentencing

guidelines, the Court was required to sentence McDade to 324 months in prison, a sentence

which the Court described at the time as "much more than sufficiently punitive."  *See* Judgment

and Commitment (June 3, 2002), at 6.  McDade's conviction was affirmed on his direct appeal to

the United States Court of Appeals for the District of Columbia Circuit, *see United States v.*

*McDade*, No. 02-3054, 2003 WL 22204126 (D.C. Cir. Sept. 16, 2003), and the Supreme Court

denied his petition for a writ of certiorari.  *See McDade v. United States*, 541 U.S. 911 (2004).

            McDade, through new counsel, then filed a motion to vacate, set aside or correct

his sentence under 28 U.S.C. § 2255.  He challenged his sentence on constitutional grounds,

relying on *United States v. Booker*, 543 U.S. 220 (2005).  He also asserted that he had received

ineffective assistance of counsel from both his appellate lawyer and his trial lawyer, the latter

because trial counsel purportedly failed to interview and present the testimony of three potential

defense witnesses.  This Court denied the *Booker* motion and the challenge to the effectiveness

of appellate counsel without a hearing.  *See United States v. McDade*, Criminal No. 00-0105,

Dkt. No. 345 (D.D.C. Jan. 5, 2006) (Memo. Op. & Order).

On January 15, 2008, the Court held an evidentiary hearing on the defendant's

ineffective assistance of trial counsel claim.  McDade testified about the information he had

given to trial counsel regarding three impeachment witnesses, and trial counsel testified as to his

trial strategy and his reasons for not calling or interviewing those witnesses.  McDade also called

one of those three witnesses to testify at the hearing and submitted an affidavit from another.

This Court denied McDade's Section 2255 motion, finding that trial counsel's decisions not to

call the three witnesses and not to interview two of them were not objectively unreasonable,

while the decision not to interview one of them was.  *See United States v. McDade*, 639 F. Supp.

2d 77, 82-84 (D.D.C. 2009).  Nevertheless, the Court found that McDade had failed to show

prejudice and therefore was not entitled to relief.  *Id.* at 85.  After briefing and oral argument, the

D.C. Circuit affirmed.  *See United States v. McDade*, 699 F.3d 499 (D.C. Cir. 2012).

I.

On July 13, 2013, Mr. McDade, acting *pro se*, filed a new motion to vacate, set

aside or correct his sentence pursuant to 28 U.S.C. § 2255.  He requests that his conviction be

vacated because of purported newly discovered evidence, prosecutorial misconduct, and

violations of *Brady v. Maryland*, 373 U.S. 83 (1963).  Rather than respond to McDade's Section

2255 motion, the United States moved to transfer that motion from this Court to the U.S. Court

of Appeals for the D.C. Circuit.  The government argues that authorization from that court is

required before this Court can consider a second or successive Section 2255 motion, and that,

without authorization from the D.C. Circuit, this Court lacks jurisdiction to consider defendant's

claims on their merits. *See* 28 U.S.C. § 2255(h). Because the Court did not believe that a *pro se*

defendant should be required to respond to this jurisdictional argument without the assistance of

counsel, it appointed Christopher M. Davis and Mary E. Davis to represent Mr. McDade in this

matter, and they have done so professionally and with great skill.

        In their first filing, counsel for defendant McDade acknowledged that the current

motion to vacate constitutes a successive Section 2255 motion and agreed that the D.C. Circuit

must authorize this Court to consider the motion on the merits.[1] In their supplemental response,

counsel for defendant McDade have refined their argument, now suggesting that, to the extent

the motion to vacate involves an asserted violation of *Brady*, it does not require authorization

from the court of appeals pursuant to 28 U.S.C. § 2255(h), because the *Brady* claim did not arise

until after the earlier motion to vacate was filed and therefore should not be considered a "second

or successive" motion under Section 2255.[2] Defendant relies on a decision from the Ninth

---

[1]    After some back-and-forth between the parties, counsel offered two alternatives: either this Court could transfer the defendant's motion to the D.C. Circuit, or it could dismiss the motion to vacate, without prejudice to the defendant's refiling it in the D.C. Circuit.

[2]    Section 2255(h) provides as follows:

    A second or successive motion must be certified . . . by a panel of the appropriate court of appeals to contain –

    (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

    (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Circuit in support of this argument.  *See United States v. Lopez*, 577 F.3d 1053 (9th Cir. 2009), *cert. denied*, 559 U.S. 984 (2010).

The government maintains that, even with respect to defendant's claims of *Brady* violations and governmental misconduct, this Court would only have jurisdiction to decide McDade's Section 2255 motion on the merits if Mr. McDade first obtains authorization from the D.C. Circuit.  In its view, the instant motion is still a "second or successive" Section 2255 motion because:  (1) the defendant's first Section 2255 motion was decided on the merits; (2) the defendant's claims of a *Brady* violation and prosecutorial misconduct would not have been unripe or dismissed as premature had they been raised in his first Section 2255 motion; (3) all *Brady* claims in a second-in-time Section 2255 motion require certification from the court of appeals; and (4) the defendant's claims lack merit.

Without resolving the areas of dispute between Mr. McDade and the government, the Court deals with the area of common ground:  putting *Brady* aside, this Court has jurisdiction to decide the numerous other claims made by McDade on this second or successive Section 2255 motion only if authorized by the court of appeals to exercise jurisdiction.  *See* 28 U.S.C. § 2255(h); *United States v. Mitchell*, 953 F. Supp. 2d 162, 165 (D.D.C. 2013); *United States v. Mathis*, 660 F. Supp. 2d 27, 29-30 (D.D.C. 2009); *Harris v. United States*, 522 F. Supp. 2d 199, 203 (D.D.C. 2007).  And presumably McDade wants the Court to consider all of the claims raised on this Section 2255 motion, not just the *Brady* and prosecutorial misconduct claims. Because the Court "must establish that it has the power to hear the case before addressing the merits of [the Section 2255] motion," *United States v. Mitchell*, 953 F. Supp. 2d at 165, it will grant the government's motion to transfer the defendant's motion to vacate, set aside or correct his sentence to the United States Court of Appeals for the District of Columbia Circuit.

II.

At the time the Court sentenced Mr. McDade nearly twelve years ago, on May 31, 2002, he was a 34-year old married man with two young children, one of whom is disabled. *See* Presentence Investigation Report (May 13, 2002), at 11, 12-13.  He was a high school graduate who had been employed more or less steadily as a loader for United Parcel Service, as an apprentice for a plumbing company, as a self-employed operator of a company that provided transportation to the handicapped, and as a sanitation truck driver. *Id*. at 14-16.  He was described by his wife, a hair stylist who suffers from a heart murmur, as a good father to their children and to her son by a prior relationship. *Id*. at 12-13.  Before his current conviction, Mr. McDade had one prior misdemeanor conviction for which he was ordered to pay a ten-dollar fine. *Id*. at 10-11.  For the instant offense, he faced a ten-year mandatory minimum sentence and, at Offense Level 41, Criminal History Category I, a pre-*Booker* guideline sentence of 324 months to life. *Id*. at 9-10.  As stated, the Court sentenced him to 324 months, as it was required to do, noting that the sentence imposed was "much more than sufficiently punitive."  Judgment and Commitment at 6.

In denying Mr. McDade's first motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, the Court said the following:

> Twenty-seven years is a very long time.  None of Mr. McDade's former co-defendants or co-conspirators received more than a seven-and-one-half year sentence.  While each of them pled guilty and provided substantial assistance to the government by testifying against Mr. McDade (and some provided assistance in other ways), this sentence is disproportionate.  Indeed, had Mr. McDade not exercised his constitutional right to a jury trial and instead pled guilty, the likely sentence under even a mandatory Guideline regime would have been approximately 168 months, approximately half the sentence the Court was required to impose after Mr. McDade was found guilty at trial.  Had the Sentencing

Guidelines been advisory in 2002, or if *Booker* were retroactive now, the Court would vary substantially from the Guideline sentence of 324 months  This Court, however, is without authority to reduce Mr. McDade's sentence at this juncture.

      The Court may, however, "upon motion of the Director of the Bureau of Prisons . . . reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1).  While the Court "lack[s] jurisdiction to issue a writ of mandamus compelling the Director to seek a sentence reduction for an inmate," *Defeo v. Lapin*, Civil Action No. 08-7513, 2009 WL 1788056 at *3 (S.D.N.Y. June 22, 2009), the Court urges the Director to do so in this case in his discretion.  The Court will direct the Clerk's Office to send a copy of this Opinion to the Director of the Bureau of Prisons for consideration of a motion to reduce Mr. McDade's sentence.

      In addition, the Court urges the President to consider executive clemency for Mr. McDade and to reduce Mr. McDade's sentence to fifteen years in prison followed by a substituted term of supervised release. *See United States v. Harvey*, 946 F.2d 1375, 1378 (8th Cir. 1991) ("[E]xecutive clemency is one of the 'flexible techniques' for modifying sentences."); *United States v. Angelos*, 345 F. Supp. 2d 1227, 1267 (D. Utah 2004) ("Given that the President has exclusive power to commute sentences . . . such a [judicial] recommendation is entirely proper."). The Court directs the Clerk's Office to send a copy of this Opinion to the Office of the Pardon Attorney in the United States Department of Justice to be forwarded to the President for clemency consideration.

*United States v. McDade*, 639 F. Supp. 2d at 86-87 (footnote omitted).[3]

      Unfortunately, the Court's plea went unheeded.  In the intervening nearly five years, the Director of the Bureau of Prisons has filed no motion pursuant to 18 U.S.C. § 3582(c)(1), and neither President Bush nor President Obama has considered executive

---

    [3]    As one commentator, discussing judicial recommendations of executive clemency, has noted:  "Unfortunately, this period of mandatory injustice continues to manifest its influence.  Absent a remedy, Angelos, Harvey, and McDade must serve out, in their entireties, sentences that the sentencing judges believed were excessive.  All three sentencing judges recognized the gravity of the situation and searched for a solution."  Joanna M. Huang, Note, *Correcting Mandatory Injustice: Judicial Recommendation of Executive Clemency*, 60 Duke L.J. 131, 138 (2010) (footnote omitted).

clemency for Mr. McDade.  But the Court has not lost hope, and presumably Mr. McDade has not either.

Earlier this year, Deputy Attorney General James M. Cole previewed a new effort on the part of the Department of Justice to identify individuals who are potential candidates for executive clemency and sentence commutations and whom he hoped, with the help of volunteer lawyers and bar associations, would be encouraged to prepare clemency petitions to the Department of Justice.  James M. Cole, U.S. Deputy Att'y Gen., Remarks at the N.Y. State Bar Association Annual Meeting (Jan. 30, 2014), *available at* http://www.justice.gov/iso/opa/dag/ speeches/2014/dag-speech-140130.html.  He said at the time:  "For our criminal justice system to be effective, it needs to not only be fair; but it also must be perceived as being fair.  These older, stringent punishments, that are out of line with sentences imposed under today's laws, erode people's confidence in our criminal justice system."  *Id*.  Then, just last week, Deputy Attorney General Cole formally announced a new initiative to encourage qualified federal inmates to petition to have their sentences commuted or reduced by the President, an initiative that will have the assistance of numerous volunteer attorneys and groups under the umbrella Clemency Project 2014.  James M. Cole, U.S. Deputy Att'y Gen., Remarks at the Press Conference Announcing the Clemency Initiative (Apr. 23, 2014), *available at* http://www.justice.gov/iso/opa/dag/ speeches/2014/dag-speech-140423.html; *see also* Press Release, U.S. Dep't of Justice, Announcing New Clemency Initiative, Deputy Attorney General James M. Cole Details Broad New Criteria for Applicants (Apr. 23, 2014), *available at* http://www.justice.gov/opa/pr/2014/ April/14-dag-419.html.  He noted that the initiative is not limited to crack offenders, but to "worthy candidates" who meet six specific criteria.  Cole, Remarks at the Press Conference

Announcing the Clemency Initiative, *supra*.  He stated that this clemency initiative "will go far to promote the most fundamental of American ideals – equal justice under law."  *Id.*

The Court continues to believe that Byron McDade is a prime candidate for executive clemency.  The sentence this Court was required to impose on Mr. McDade was unjust at the time and is "out of line" with and disproportionate to those that would be imposed under similar facts today.  While the Court is powerless to reduce the sentence it was required by then-existing law to impose, the President is not.  The Court urges Mr. McDade's appointed counsel to pursue executive clemency on Mr. McDade's behalf so that justice may be done in this case.  A separate Order consistent with this Memorandum Opinion is issued this same day.


/s/_____
PAUL L. FRIEDMAN
DATE:  April 29, 2014          United States District Judge

8